**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| STEVE PUCKITT, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. G-09-0056 |
| § | |
| WELLS FARGO BANK, N.A. § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND ORDER**

Steve Puckitt sued his mortgage holder, Wells Fargo Bank, N.A. in Texas state court. Wells Fargo timely removed based on diversity of citizenship. Puckitt has moved to remand, asserting that the amount in controversy is less than $75,000. (Docket Entry No. 36). Based on the motion and response, the parties' submissions, and the applicable law, this court denies the motion to remand. The reasons are set out below.

**I.     Background**

Puckitt owns a home in Galveston County, Texas and Wells Fargo holds the note on his mortgage. Under the parties' loan agreement, Wells Fargo agreed to place part of Puckitt's monthly payments in escrow to pay the premium charges for certain insurance policies on the home. (Docket Entry No. 1-4). In July 2007, Wells Fargo set aside funds on Puckitt's behalf to pay the premium on a windstorm policy. (*Id*.). On September 12, 2008, Puckitt's home was damaged by Hurricane Ike. Puckitt then discovered that his home was not covered by windstorm insurance. (*Id*.).

On December 29, 2008, Puckitt sued Wells Fargo in Texas state court. (*Id.*). Puckitt alleged that Wells Fargo breached its contract with Puckitt by failing to pay the insurance premium. Puckitt

also asserted a claim for common law negligence for failing to act as a reasonably prudent mortgage company in neglecting to advise Puckitt of the status of his windstorm policy. (*Id*.). Puckitt sought damages that would "fairly and reasonably compensate [him] for the repairs or replacement of his dwelling and personal property, the increase in insurance premium, the reduced coverage of the forced policy, the additional damage to the dwelling and personal property caused by the delays in repairing the home, cost of mitigating the damages to his dwelling and personal property, reduced value of the home and all other direct or indirect damages." (*Id*.). The state-court petition did not allege a specific damages amount.

On January 20, 2009, Wells Fargo was served with the original petition. (Docket Entry No. 1-3). In accordance with state court procedure, Wells Fargo specially excepted to Puckitt's original petition because it did not set forth the damages claimed. (*Id*.). On March 16, 2009, Puckitt filed an amended petition seeking damages "not to exceed $100,000 from [Wells Fargo] as well as costs of court and pre and post judgment interest." (*Id*.). Wells Fargo timely removed based on diversity, claiming that the amount in controversy was met by Puckitt's allegation of the damages he sought. (Docket Entry No. 1). Puckitt filed a motion to remand on May 17, 2010, asserting that the amount in controversy requirement of diversity jurisdiction is not met. (Docket Entry No. 36). He attached signed affidavits stating that damages do not exceed $50,000 and attorneys' fees do not exceed $25,000. (*Id*.).

During the time this case has been in federal court, Puckitt has amended his complaint to join an additional defendant, Brooke Agency Services Company, LLC, against which he obtained a default judgment. (Docket Entry Nos. 14, 30, 32). Federal jurisdiction over the claims against Brooke was based on diversity of citizenship. (Docket Entry No. 14).

## II.     The Applicable Law

A defendant has the right to remove a case to federal court when federal subject-matter jurisdiction exists and the removal procedure is followed properly. *See* 28 U.S.C. § 1441. The removing party bears the burden of showing that federal jurisdiction exists and that removal is proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2000) (*citing De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995)). In a removed action, a district court is required to remand the case to state court before final judgment if it determines that it lacks subject-matter jurisdiction. *See* 28 U.S.C. § 1447(c); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182–183 (5th Cir. 2005). The existence of federal subject-matter jurisdiction is determined at the time of removal from state court. *See Bissonnet Invs. LLC v. Quinlan (In Re Bissonet Invs. LLC)*, 320 F.3d 520, 525 (5th Cir. 2003) (citing *Arnold v. Garlock*, 278 F.3d 426, 434 (5th Cir. 2002)); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). Any ambiguities are construed against removal. *Manguno*, 276 F.3d at 723.

If the requirements of 28 U.S.C. § 1332(a) are not established in a diversity case, a federal court must decline jurisdiction. *See* 28 U.S.C. § 1441. Section 1332 requires complete diversity of citizenship between the parties and more than $75,000 in controversy, exclusive of interest and costs. 28 U.S.C. § 1332. For a federal court to decline jurisdiction because the amount in controversy requirement is not met, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *De Aguilar*, 47 F.3d at 1409 (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). The Fifth Circuit has "indicated that the legal certainty test does not apply in a remand situation where the plaintiff has alleged an indeterminate amount of damages." *De Aguilar*, 47 F.3d at 1409. In such a case, "the plaintiff's

claim remains presumptively correct unless the defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount." *Id.* at 1412.

The defendant can show the amount in controversy is greater than $75,000 if "(1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or, alternatively, (2) [he] sets forth summary judgment type evidence of facts in controversy that support a finding of the requisite amount. *Manguno*, 276 F.3d at 723  (quotation omitted). "[T]he proper procedure is to [initially] only look at the face of the complaint and ask whether the amount in controversy [is] likely to exceed [$75,000]." *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995).  If it is not facially apparent, then a removing defendant may support federal jurisdiction by setting forth the facts in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount. *Bourne v. Wal-Mart Stores, Inc.*, 582 F.Supp.2d 828, 839 (E.D. Tex. 2008) (quoting *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999)).

"[O]nce a defendant is able to show that the amount in controversy exceeds the jurisdictional amount, removal is proper, provided plaintiff has not shown that it is legally certain that his recovery will not exceed the amount stated in the state complaint." *De Aguilar*, 47 F.3d at 1412. Specifically, the plaintiff must show "that *at the time of removal* he was legally certain not to be able to recover" more than $75,000. *Allen*, 63 F.3d at 1335 n.14 (emphasis added).  The plaintiff "may establish this by identifying a statute, or by filing a binding stipulation, that so limits [his] recovery." *Manguno*, 276 F.3d at 724.  This is not a "burden shifting exercise," but requires that the plaintiff "make all information known at the time he files the complaint." *De Aguilar*, 47 F.3d at 1412.

A plaintiff cannot avoid federal jurisdiction by later stipulating to an amount of damages below the jurisdictional minimum.  *See Red Cab Co.*, 303 U.S. at 292.  However, an affidavit may

4

be sufficient to defeat removal if it merely clarifies, rather than reduces, the demand sought in a previous ambiguous petition. *See Marcel v. Pool*, 5 F.3d 81, 85 (5th Cir. 1993)  "While post-removal affidavits may be considered in determining the amount of controversy at the time of removal, such affidavits may be considered *only* if the basis for jurisdiction is ambiguous at the time of removal." *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) (emphasis added). If it is facially apparent at the time of removal that the amount in controversy requirement is met, later stipulations reducing the amount in controversy do not deprive the district court of jurisdiction. *See id.*

## III.   Analysis

### A.   Citizenship

The parties do not contest that there is complete diversity of citizenship.  Puckitt, a Texas citizen, alleged in his original and amended petitions that Wells Fargo is "a foreign corporation conducting business in Galveston County, Texas."  (Docket Entry No. 1-4).  A corporation is a citizen of both its place of incorporation and its principal place of business.  28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend*, --- U.S. ----, 130 S. Ct. 1181 (2010).  Wells Fargo is incorporated in Delaware and asserts that its principal place of business is San Francisco, California.  (Docket Entry No. 1).  Wells Fargo is a citizen of Delaware and California for purposes of diversity jurisdiction.  Complete diversity of citizenship is present.

### B.   Amount in Controversy

In determining whether the amount in controversy requirement is satisfied, this court must look first to the face of the state court petition. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336

(5th Cir. 1995). If the answer is not facially apparent, this court may consider facts asserted in the notice of removal. *Id.* at 1335. In Texas, plaintiffs are prohibited from pleading for specific amounts in claims for unliquidated damages. TEX. R. CIV. P. 47(b). On special exception, the state court may require the pleader to amend to specify the maximum amount claimed. *Id.* Puckitt's initial petition did not specifically address the amount of damages in controversy. His amended petition, filed in response to Wells Fargo's special exception, stated that he seeks "actual damages not to exceed $100,000 from [Wells Fargo] as well as costs of court and pre and post judgment interest at the rate allowable by law." (Docket Entry No. 1-4). The notice of removal provided jurisdictional facts that support removal. *Allen*, 63 F.3d at 1335. In the notice of removal, Wells Fargo cited Puckitt's claim that damages would not exceed $100,000 and included both Puckitt's original and amended petitions. (Docket Entry No. 1-4). In the petitions, Puckitt referred to three independent assessments of the damage to the home, ranging from $26,905.51 to $80,946.00. (*Id.*).

Given that Puckitt's petition reserved the possibility that damages could reach as high as $100,000, and that his petitions referred to damage assessments as high as $80,946.00, it cannot be proven to a legal certainty that the amount in controversy was less than $75,000 at the time of removal. Although Puckitt has now filed affidavits stating that the actual damages are approximately $48,000, this does not merely clarify an ambiguous petition. The affidavits do not oust this court's jurisdiction. Puckitt's pleadings do not show a certainty that he was legally unable to recover more than $75,000 at the time the case was removed.

Because Puckitt has failed to show that he was legally certain to recover no more than $75,000 when Wells Fargo removed the case to federal court in April 2009, the amount in controversy requirement is satisfied and removal was proper.

## IV. Conclusion

The motion to remand is denied.

SIGNED on June 28, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge